

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| LACY ANNE CRAIG, | ) | |
| | ) | |
| Respondent, | ) | WD84571 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | May 3, 2022 |
| CORY WAYNE CRAIG, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Macon County, Missouri
The Honorable Mike Greenwell, Judge**

**Before Division Two:** Karen King Mitchell, Presiding Judge, and
Edward R. Ardini, Jr., and Thomas N. Chapman, Judges

Cory Craig (Husband) appeals from the trial court's dissolution judgment. Husband raises six points on appeal, arguing that the trial court erred in: (1) ordering child support for two children because the oldest child failed to comply with § 452.340.5;[1] (2) ordering support for the oldest child because she failed to comply with § 452.340.5; (3) failing to appoint a guardian ad litem (GAL); (4) ordering retroactive child support for extraordinary expenses and back support because the oldest child failed to comply with § 452.340.5; (5) offsetting Lacy Craig's (Wife) assets with

---

[1] All statutory references are to the Revised Statutes of Missouri (Cum. Supp. 2019).

credit card debt; and (6) dividing the property in a manner that was neither equitable nor fair. Finding no error, we affirm.

## Background

Husband and Wife were married on June 1, 1996, and had two children born of the marriage: M.C. (born 3/16/2000) and C.C. (born 6/16/2003). The parties separated on January 9, 2019. At the time, M.C. was 18 years old and had been enrolled as a student at the University of Missouri since August of 2018. Wife filed a petition for dissolution on June 5, 2019. In the petition, Wife sought sole legal and physical custody of C.C. (the only child under the age of 18) with visitation to Husband at C.C.'s discretion, given her mature age (nearly 16 at the time of filing). Wife also sought child support, extraordinary expenses, and post-secondary educational expenses for the children.

On November 18, 2019, Wife filed a motion for temporary child support and other costs. The court granted her motion on July 10, 2020, ordering Husband to pay temporary child support in the amount of $1,149.00 per month. Thereafter, Husband filed a motion to reconsider the award of temporary child support payments, arguing that, in calculating the amount, the trial court disregarded contributions made by Husband for the financial support of the children; he raised no other claims of error.

The court held a bifurcated trial, deciding on dissolution, the parenting plan, child support and expenses in the first phase and dividing assets and debts in the second phase. The court awarded sole legal and physical custody of C.C. to Wife and ordered Husband to pay $1,149.00 per month in child support going forward and $14,937.00 in retroactive support for June 2019 through June 2020. The court noted that, when M.C. was either emancipated or reached the age of 21 (whichever came first), Husband's monthly child support obligation would drop to $824.00.

2

The court further ordered Husband to pay $6,784.25 to Wife for extraordinary expenses for the children, after crediting Husband for payments he made on car loans and insurance. After dividing the personal property and real estate, the court ordered Husband to make an equalization payment to Wife in the amount of $48,327.72. Husband appeals.

## Standard of Review

"On review of a court-tried case, [we will] affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Aldrich v. Aldrich*, 637 S.W.3d 485, 489 (Mo. App. W.D. 2021) (quoting *ADB Cos. v. Socket Telecom, LLC*, 618 S.W.3d 237, 244 (Mo. App. W.D. 2021)). "[T]he trial court's judgment is presumed valid and the burden is on the appellant to demonstrate its incorrectness." *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo. App. S.D. 2010) (quoting *Bowles v. All Cntys. Inv. Corp.*, 46 S.W.3d 636, 638 (Mo. App. S.D. 2001)).

## Preservation

Rule 84.04(d)(1)[2] provides that,

[w]here the appellate court reviews the decision of a trial court, each point shall:

(A) Identify the trial court ruling or action that the appellant challenges;

(B) *State concisely the legal reasons for the appellant's claim of reversible error*; and

(C) Explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

(Emphasis added.) "Rule 84.04's requirements are mandatory." *Lexow v. Boeing Co.*, SC99199, 2022 WL 791953, *2 (Mo. banc Mar. 15, 2022) (quoting *Fowler v. Mo. Sheriffs' Ret. Sys.*, 623 S.W.3d 578, 583 (Mo. banc 2021)).

---

[2] All rule references are to the Missouri Supreme Court Rules (2021).

Because "[w]e can reverse [a] court-tried judgment *only* if no substantial evidence supports it, *or* it is against the weight of the evidence, *or* it erroneously declares or applies the law," *Kim v. Mercy Clinic Springfield Cmtys.*, 556 S.W.3d 613, 617 (Mo. App. S.D. 2018) (quoting *Hagan v. Hagan*, 530 S.W.3d 608, 610 (Mo. App. S.D. 2017)) (emphasis in original), to comply with Rule 84.04(d)(1)(B), the appellant must specify one of these bases of error within the point relied on, itself. *Id.*; *Ebert v. Ebert*, 627 S.W.3d 571, 580 (Mo. App. E.D. 2021); *Smith v. Great Am. Assur. Co.*, 436 S.W.3d 700, 703-04 (Mo. App. S.D. 2014). At best, a point relied on that fails to do so "preserves nothing for appellate review." *In re Swearingen*, 42 S.W.3d 741, 747 (Mo. App. W.D. 2001) (quoting *Smith v. Indep. Tax Increment Fin. Comm'n*, 919 S.W.2d 292, 294 (Mo. App. W.D. 1996)). And, in fact, "[a] party's failure to comply with the requirements set forth in Rule 84.04(d) constitutes grounds for our dismissal of the appeal." *In re Estate of Tuckness*, 403 S.W.3d 597, 598 (Mo. App. S.D. 2011).

Nevertheless, where a point has not been properly preserved, we have discretion to review it for plain error under Rule 84.13. *In re Swearingen*, 42 S.W.3d at 746. But "[p]lain error review is proper in civil cases only if we find that 'the error has affected the parties' rights so substantially that a miscarriage of justice or manifest injustice would occur if the error were left uncorrected.'" *Id.* (quoting *Peterson v. Nat'l Carriers, Inc.*, 972 S.W.2d 349, 357 (Mo. App. W.D. 1998)).

Here, Husband's Point III is the only point relied on that raises one of the bases for reversing alleged error in a court-tried case. Though Points I and VI assert within the argument that the court misapplied the law, the points themselves do not contain similar assertions. "Arguments advanced in the brief but not raised in the point relied on are not preserved, and will not be addressed by this court." *Ziade v. Quality Bus. Sols., Inc.*, 618 S.W.3d 537, 544 (Mo. App. W.D. 2021) (quoting *Burg v. Dampier*, 346 S.W.3d 343, 354 (Mo. App. W.D. 2011)) (point relied

4

on argued erroneous application of law but argument claimed lack of substantial evidence to support the judgment).

We recognize the challenges Husband faces as a *pro se* litigant on appeal. But "[s]elf-represented litigants are held to the same standards as attorneys; thus, self-represented litigants must comply with Missouri Court Rules, including Rule 84.04." *In re Estate of Tuckness*, 403 S.W.3d at 598. And "we cannot give preferential treatment to non-lawyers." *Id*. "It is not for lack of sympathy, but rather is necessitated by the requirement of judicial impartiality, judicial economy, and fairness to all parties." *Id*. (quoting *Duncan v. Duncan*, 320 S.W.3d 725, 726 (Mo. App. E.D. 2010)).

Even beyond the deficiencies in the points relied on, Husband's Points I, II, IV, and VI suffer from additional preservation problems. Points I, II, and IV all argue essentially the same issue—to receive support payments, M.C. was required by § 452.340.5 to provide Husband with certain information; she failed to do so; and, therefore, the court erred in ordering Husband to pay any support for M.C. Though Husband is correct that § 452.340.5 requires a child enrolled in higher education to furnish certain documentation to the parent providing support in order to continue receiving support after the age of 18, a "claim that [a c]hild failed to comply with section 452.340.5 . . . is an affirmative defense to the pleading." *Brown v. Brown*, 370 S.W.3d 684, 688 (Mo. App. W.D. 2012) (quoting *Scott v. Clanton*, 113 S.W.3d 207, 212 (Mo. App. S.D. 2003)). "Affirmative defenses must be pled, or they will generally be waived." *Poger v. Mo. Dep't of Transp.*, 501 S.W.3d 37, 43 (Mo. App. E.D. 2016). And Husband, "as the party seeking to abate his child support obligation, bears the burden of raising this defense." *Brown*, 370 S.W.3d at 688 (quoting *Scott*, 113 S.W.3d at 212). It was neither Wife's nor M.C.'s burden to "first have asserted that [M.C.] had complied with the reporting requirements set forth in section 452.340.5."

5

*Scott*, 113 S.W.3d at 211. Husband never pled noncompliance with the notification requirement of § 452.340.5 as an affirmative defense to a support obligation for M.C. Therefore, any claims based on the alleged noncompliance are waived.

In Point VI, Husband argues that the trial court failed to consider certain payments he made during the parties' separation when the court divided the property and liabilities between the parties, thereby violating § 452.330. The allegation that the court failed to consider certain facts is tantamount to a claim that the court failed to make any findings about those facts. *In re K.S.*, 561 S.W.3d 399, 408 (Mo. App. W.D. 2018). But, to preserve a claim of insufficient findings, a complaining party must file a post-judgment motion to amend under Rule 78.07(c).[3] Husband filed no such motion. Thus his challenge to the court's findings is not preserved.

Therefore, as a result of both briefing deficiencies and omissions below, none of Husband's Points I, II, IV, V, or VI are preserved for review. And, because there appears to be no manifest injustice or miscarriage of justice resulting from any of the alleged errors, we decline to engage in plain error review.

Points I, II, IV, V, and VI are denied.

**Analysis**

In Point III, Husband argues that the trial court misapplied the law in failing to appoint a guardian ad litem (GAL) insofar as it was required to do so by § 452.423.2. We disagree.

Section 452.423.2 provides that "[t]he court shall appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged." This mandatory appointment "is triggered only by an allegation of child abuse expressly stated in a pleading and not by the mere introduction

---

[3] Rule 78.07(c) provides, "In all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review."

6

of evidence at trial." *Rombach v. Rombach*, 867 S.W.2d 500, 503 (Mo. banc 1993). Here, though no abuse was alleged in any pleading, Husband did request appointment of a GAL after claiming that there were allegations of abuse in Wife's discovery responses. Husband's request did not elaborate as to the nature of the allegations, but the evidence at trial suggested, generally, that Husband was very controlling and verbally abusive to Wife and both children and that he continued seeking contact with the children after they both made it clear they did not wish to have contact with him, leading one child to seek an order of protection against Husband.

"Mandatory appointment of a guardian ad litem is not intended to benefit either of the parties in a dissolution proceeding." *Id*. at 502. And "section 452.423.2 is not designed 'to provide grounds for disappointed parents to seek retrial.'" *Abernathy v. Collins*, 524 S.W.3d 173, 179 (Mo. App. W.D. 2017) (quoting *Soehlke v. Soehlke*, 398 S.W.3d 10, 18 (Mo. banc 2013)). Accordingly, "a parent may not protest the non-appointment of a guardian under § 452.423.[2] on the basis that the parent's interests were harmed, when no harm to the child is shown." *Van Pelt v. Van Pelt*, 824 S.W.2d 135, 139 (Mo. App. W.D. 1992). "Section 452.423, even when combined with Rule 55.33 [allowing pleadings to conform to the evidence], does not require the appointment of a guardian ad litem merely to advance the litigation tactics of a [spouse]." *Rombach*, 867 S.W.2d at 504. "As long as the result reached by the trial court is supported by the evidence as being in the best interests of the child[ren], the paramount concern of Missouri's child custody provisions, the alleged abuser has no complaint for non-appointment." *Van Pelt*, 824 S.W.2d at 139 (internal citation omitted).

Here, to the extent there were allegations of abuse of any kind,[4] they were against only Husband. And his sole claim of harm on appeal is that *he* was "denied any reasonable or

---

[4] It is not clear that Husband's behavior, though less than stellar, amounted to the kind of conduct that would trigger the mandatory appointment of a GAL under § 452.423.2. *See, e.g., Rombach v. Rombach*, 867 S.W.2d 500,

meaningful relationship with his children." He did not allege any resulting harm to the children from the absence of a GAL. As the court granted sole legal and physical custody of the parties' only minor child to Wife, Husband has no room to complain about the failure to appoint a GAL, as the court's ultimate custody determination was plainly in the best interests of the parties' minor child.

Point III is denied.

## Conclusion

Due to Husband's failure to preserve his claims in Points I, II, IV, V, and VI, we decline to review them. His remaining claim that the court erred in failing to appoint a GAL is without merit. The trial court's judgment is affirmed.

Karen King Mitchell, Presiding Judge

Edward R. Ardini, Jr., and Thomas N. Chapman, Judges, concur.

---

502, 504 (Mo. banc 1993) (holding that allegations that the husband used profanity; called child a "fat little pig"; poured water on a child during a tantrum; failed to seek prompt medical attention for children's injuries; grabbed, pushed, shoved, and spoke harshly to children to get them into the car; and aimed his car at a child to give the impression that he would run the child over if the child failed to get into the car "was not sufficient to raise the issues of child abuse or neglect").